OPINION
{¶ 1} Appellant Charles Merritt ("appellant") appeals his conviction, in the Richland County Court of Common Pleas, for two counts of rape, two counts of gross sexual imposition, one count of pandering obscenity involving a minor, and one count of illegal use of a minor in a nudity-oriented material or performance. The following facts give rise to this appeal.
 {¶ 2} On May 23, 2004, the victim, Tamara Kershner, an eleven-year-old girl, was visiting her grandmother, Bonnie Kershner. That afternoon, Tamara went next door, to appellant's residence, to play games on the computer. Appellant's mother was present when Tamara arrived, however, shortly thereafter she left the residence to go play bingo. After appellant's mother left, appellant asked Tamara to bring him a beer. When Tamara entered appellant's bedroom to give him the beer, appellant locked the door behind her.
 {¶ 3} Appellant requested Tamara to remove her clothing. Tamara refused and appellant forced her onto the bed, removed her clothing and began performing oral sex on her. Appellant attempted vaginal intercourse and when that failed, he continued to rub his penis on Tamara's vaginal area. After a period of time, appellant again performed oral sex on Tamara. Thereafter, Tamara was able to free herself from appellant, grab her clothing, and run to her grandmother's residence.
 {¶ 4} When Tamara arrived at her grandmother's residence she was crying and visibly upset. Prior to taking a bath and changing her clothes, Tamara informed her grandmother that appellant had raped her. Bonnie Kershner took Tamara's underwear, placed it in a plastic bag and contacted Tamara's mother.
 {¶ 5} During the course of the investigation, Tamara indicated that on three prior occasions appellant had touched her breasts and performed oral sex on her. Although Tamara told her grandmother about the sexual abuse on one of the prior occasions, Bonnie Kershner did not contact the authorities. Tamara also informed the authorities that she observed appellant talking to other men on the internet and exchanging pornographic photographs of young girls. Tamara stated that appellant used his web camera to take nude photos of her as well as a photograph with her hand on his penis. Based upon these statements, the police executed a search warrant seizing two computers and various other computer-related items.
 {¶ 6} The Ohio Bureau of Criminal Identification and Investigation performed a forensic examination on both computers. The computer belonging to appellant's mother contained no evidence of child pornography. However, the computer belonging to appellant contained 212 images which portrayed children in a state of nudity and in sexual activity. The forensic examination of appellant's computer also revealed chat logs under various screen names such as, "harleycharlie582001" and "idoemyng." Contained in the chat logs of "idoemyng" was an admission, by appellant, that he had performed oral sex on an eleven-year-old girl and that he had done it for a number of months. Also contained within the chat log was a statement that when he attempted to insert his penis into the victim she "freaked out."
 {¶ 7} Subsequently, the Richland County Grand Jury indicted appellant on January 5, 2005, for two counts of rape; two counts of gross sexual imposition; one count of pandering obscenity involving a minor; and one count of illegal use of a minor in a nudity-oriented material or performance. Thereafter, appellant filed a motion to dismiss Count V of the indictment, pandering obscenity involving a minor, on the grounds that the United States Supreme Court's decision in Ashcroft v. The FreeSpeech Coalition (2002), 535 U.S. 234, prohibited prosecutions for possession of virtual child pornography. Appellant argued he could not know whether the images involved actual children.
 {¶ 8} Prior to the commencement of trial, appellant filed a motion seeking discovery of Children's Services records regarding an allegation of prior sexual abuse by the victim. The trial court conducted an in-camera review of the records and determined the record regarding an allegation that the victim had been sexually abused by her mother's boyfriend should be excluded under the rape shield statute.
 {¶ 9} Appellant's jury trial commenced on January 25, 2006. At the close of the state's case, the trial court overruled appellant's motion to dismiss. The trial court concluded Ohio's pandering obscenity statute did not criminalize possession of virtual child pornography and that the jury was capable of determining whether the images involved real children.
 {¶ 10} Following deliberations, the jury found appellant guilty as charged in the indictment. The trial court conducted a sentencing hearing on January 18, 2006. The trial court sentenced appellant to a total of eighteen years in prison. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT ERRED IN FAILING TO DISMISS COUNT V OF THE INDICTMENT.
 {¶ 12} "II. APPELLANT'S CONVICTION FOR RAPE AND GROSS SEXUAL IMPOSITION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 13} In his First Assignment of Error, appellant maintains the trial court erred when it denied his motion to dismiss Count V of the indictment charging him with pandering obscenity involving a minor in violation of R.C. 2907.321(A)(2). We disagree.
 {¶ 14} We review a trial court's decision on a motion to dismiss pursuant to a de novo standard of review. State v. Palivoda, Ashtabula App. No. 2006-A-0019, 2006-Ohio-6494, at ¶ 4. In support of this assignment of error, appellant cites Ashcroft v. The Free SpeechCoalition, supra, and argues he violated R.C. 2907.321(A)(2) only if he knowingly possessed visual depictions that involved the use of what he knew to be an actual minor engaged in sexually explicit conduct. InState v. Eichorn, Morrow App. No. 02 CA 953, 2003-Ohio-3415, we discussed the Ashcroft case as follows:
 {¶ 15} "* * * The Ashcroft case addressed the constitutionality of the Child Pornography Prevention Act of 1996 ("CPPA"). The CPPA expanded the federal prohibition on child pornography to include not only pornographic images made using actual children, but also `any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture,' that `is, or appears to be, of a minor engaging in sexually explicit conduct,' and any sexually explicit image that is `advertised, promoted, presented, described, or distributed in such a manner that conveys the impression; it depicts `a minor engaging in sexually explicit conduct.' Id. at 1392-1393.
 {¶ 16} "The United States Supreme Court found certain provisions of the CPPA overbroad and unconstitutional. Id. at 1393. The CPPA prohibited images so long as the persons appeared to be under eighteen years of age. Id. at 1400. Thus, the Court found the CPPA prohibited speech that recorded no crime and created no victims by its production.Id. at 1402.
 {¶ 17} "The Court further concluded certain provisions of the CPPA were inconsistent with previous rulings of the Court. Specifically, inMiller v. California (1973), 412 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, the Court held that pornography is obscene when the government can prove that the work in question, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value.Id. at 24. However, under the CPPA, materials need not appeal to the prurient interest, which proscribes any depiction of sexually explicit activity, no matter how it is presented. Id. at 1393.
 {¶ 18} "The Court also concluded the CPPA was inconsistent with its ruling in York v. Ferber (1982), 458 U.S. 747, 102 S.Ct. 3348,73 L.Ed.2d 1113. In Ferber, the Court upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were ` intrinsically related' to the sexual abuse of children in two ways. Id. at 759. First, as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Id. Second, because the traffic in child pornography was an economic motive for its production, the state had an interest in closing the distribution network. Id. at 760." Eichorn, supra, at ¶ 17 — ¶ 20.
 {¶ 19} We begin our analysis of appellant's vagueness argument by first noting the basic premise that statutes are entitled to a strong presumption of constitutionality. State v. Longhorn World ChampionshipRodeo, Inc. (1985), 19 Ohio App.3d 115, 118. Thus, where possible, courts should construe statutes in a manner which permits the statute to operate lawfully and constitutionally. Schneider v. Laffoon (1965),4 Ohio St.2d 89, 97.
 {¶ 20} In State v. Davis, Stark App. No. 2003CA00198, 2004-Ohio-3527, this Court explained that:
 {¶ 21} "A statute is unconstitutionally vague if men of common intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Construction Co. (1926), 269 U.S. 385,391, 46 S.Ct. 126, 70 L.Ed. 322. However, a statute is not unconstitutionally vague if it "* * * (1) provides sufficient notice of its proscriptions, and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement."Perez v. Cleveland, 78 Ohio St.3d 376, 378, 1997-Ohio-33,678 N.E.2d 537, citing Smith v. Goguen (1974), 415 U.S. 566, 94 S.Ct. 1242,39 L.Ed.2d 605." Id. at ¶ 69.
 {¶ 22} In the case sub judice, appellant argues R.C. 2907.321(A)(2) is void for vagueness because he is unable to determine if the seized images use actual minors. Thus, appellant concludes that he has no way to determine if his conduct in possessing these images is prohibited by the statute or protected by the First Amendment. This argument challenges the scienter element of the offense. In State v. Burgun
(1978), 56 Ohio St.2d 354, the Ohio Supreme Court addressed a similar argument as it pertained to pandering obscenity in violation of R.C.2907.32. The defendants argued on appeal that the circumstantial evidence presented at the trials did not support a finding that they had the requisite mens rea. Id. at 362.
 {¶ 23} In addressing this argument, the Ohio Supreme Court noted that the current statute under which the defendants were convicted described the requisite element of scienter as follows: "No person, with knowledge of the character of the material or performance involved, shall do any of the following* * *." Id. at 363. The Court explained that "[a]s indicated by the statutory language, `precise knowledge' of `contents' is unnecessary and instead the emphasis is on `notice' of the' `Nature' of the material." Id. at 364. The Court further noted that knowledge of the "character" or "nature" of the obscene material is a constitutionally adequate indicium of scienter to uphold an obscenity conviction. Id., citing Mishkin v. New York (1966), 383 U.S. 502. rehearing denied 384 U.S. 934.
 {¶ 24} In the matter currently under consideration, the state charged appellant with a violation of R.C. 2907.321(A)(2), which provides:
 {¶ 25} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 {¶ 26} "(2) Promote or advertise for sale or dissemination; sell, deliver, disseminate, display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, disseminate, display, exhibit, present, rent or provide, any obscene material that has a minor as one of its participants or portrayed observers;"
 {¶ 27} The requisite element of scienter under R.C. 2907.321 is the same as the scienter requirement considered by the Ohio Supreme Court in the Burgun case (i.e. "with knowledge of the character of the material or performance involved[.]" Further, under R.C. 2907.321(A)(3), "* * * the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor."
 {¶ 28} Based upon the above, we find precise knowledge that the child depicted in the image is a minor is unnecessary. Rather, according to the language of the statute, the emphasis is on "notice" of the "nature" of the material. Further, a jury is permitted to infer that a person in the material is a minor if the material represents the person as a minor. As we explained in the Eichorn decision, the main distinction between the CPPA and R.C. 2907.321 pandering obscenity to a minor statute "* * * is that the CPPA sought to prohibit virtual child pornography, that is, materials that appear to depict minors but were produced by means other than using real children." Eichorn at ¶ 24.
 {¶ 29} The statute appellant challenges only prohibits materials produced by the use of real children and permits the trier of fact to infer that the person depicted in the material is in fact a minor if the material represents or depicts the person as a minor. Thus, the statute appellant challenges is not unconstitutionally vague because it provides sufficient notice of its proscriptions and contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement.
 {¶ 30} Appellant's First Assignment of Error is overruled.
 II {¶ 31} Appellant maintains, in his Second Assignment of Error, that his convictions for rape and gross sexual imposition are against the manifest weight of the evidence. We disagree.
 {¶ 32} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon this standard that we review appellant's assignment of error.
 {¶ 33} In support of this assignment of error, appellant first argues that according to the state's expert, Anthony Tambasco, there was no presence of semen in Tamara's underwear that was turned over to the authorities. At trial, Mr. Tambasco testified that if the underwear was sealed, in a plastic bag while it was still wet, it would be detrimental to the biological sample. Tr. Vol. II at 316. Mr. Tambasco also testified that he did not test the underwear for the presence of saliva because he did not receive specific instructions to do so. Id. at 305-306; 313.
 {¶ 34} However, despite the lack of forensic evidence, Tamara's testimony is corroborated by statements appellant made in an on-line chat log on May 30, 2004, just seven days after the incident with Tamara. Diamond Boggs, a computer forensic specialist for the Bureau of Criminal Identification and Investigation, testified that upon examining appellant's computer, she discovered appellant had five screen names registered to him.
 {¶ 35} One screen name, "idoemyng" caught her attention because it means "I do `em young." Tr. Vol. I at 174. Ms. Boggs further testified that a portion of a chat log between "idoemyng" and an individual identified as "divadekim" caught her attention because it contained a conversation about sex with young people. In this chat log, appellant admitted to having sex with young people a couple of times and stated the youngest was age eleven, Tamara's age. Id. at 178-179. Appellant also admitted to performing oral sex and ejaculating in a young person's mouth. Id. Finally, appellant admitted to rubbing his penis on the young person's vagina. Id.
 {¶ 36} There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction. State v.Sanders, Delaware App. No. 2004-CA-A-02-009, 2005-Ohio-5472, at ¶ 11. However, in the case sub judice, Tamara's testimony is corroborated by appellant's statements he subsequently made in a chat log and also by statements Tamara made to her grandmother. We do not find that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice when it convicted appellant of two counts of rape and two counts of gross sexual imposition.
 {¶ 37} Although not specifically assigned as error, appellant also argues, in his Second Assignment of Error, the guilty verdict for Count VI charging him with a violation of R.C. 2907.323(A)(1), illegal use of a minor in nudity oriented material or performance, is also against the manifest weight of the evidence. Specifically, appellant maintains no photographs of Tamara were recovered from his computer or introduced into evidence. R.C. 2907.323(A)(1) provides as follows:
 {¶ 38} "(A) No person shall do any of the following:
 {¶ 39} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless one of the following applies * * *;"
 {¶ 40} At trial, Tamara testified that appellant took one photograph of her naked and one photograph of her holding his penis. Tr. Vol. I at 135. Appellant took the pictures in his bedroom with a web cam. Id. Tamara viewed the photographs, but had no idea what happened to them. Id. The statute does not require that the state produce the actual photograph in order to support a conviction. Rather, the statute merely prohibits a person from photographing a minor in a state of nudity. Tamara testified that appellant photographed her in a state of nudity. We do not find the jury, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction for a violation of R.C. 2907.323(A)(1) must be reversed.
 {¶ 41} Finally, appellant argues that his conviction for Count V of the indictment, pandering obscenity involving a minor, is also against the manifest weight of the evidence because the trial court improperly admitted all 212 photographs taken from his computer when only 7 of the sites could be attributed to user intervention. Appellant contends the shear number of photographs could have inflamed the jury's thinking and mislead them to convicting on all counts. At trial, the trial court stated that it would permit the photographs to come in over defense counsel's objection. Tr. Vol. II at 382. However, the trial court explained:
 {¶ 42} "But I will be giving a limited (sic) instruction at some point as to only those photos being able to be considered in regard to Count V which are demonstrated to be from files for which there is user intervention. In other words, none of the photos that come (sic) from Lost Files or from Hidden Files. So we are going to need to be able to determine by the time it goes to the jury which of those photos are from files that there was user intervention if you want to get that exhibit in." Id.
 {¶ 43} We have reviewed the record in this matter and we do not find any further discussion regarding the photographs nor does appellant refer to any portion of the transcript where the admission of these photographs was further discussed prior to their submission to the jury. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 180. We will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Based upon the state of the record, we do not find the trial court abused its discretion when it admitted all 212 photographs into evidence. As such, the jury's verdict regarding Count V of the indictment is not against the manifest weight of the evidence.
 {¶ 44} Appellant's Second Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
Wise, J., Gwin, P. J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs assessed to Appellant.